1  WARRINGTON S. PARKER III (SBN 148003)
   wparker@crowell.com
2  CROWELL & MORING LLP
   3 Embarcadero Center, 26th Floor
3  San Francisco, CA 94111
   Telephone: 415.986.2800
4  Facsimile:  415.986.2827

5  Attorneys for Defendant
   PALANTIR TECHNOLOGIES INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| JEFFREY DAVIDSON,<br><br>   Plaintiff,<br><br> v.<br><br>PALANTIR TECHNOLOGIES, INC.;<br>and DOES 1 through 10, inclusive,<br><br>   Defendants. | Case No. 3:24-cv-01357-RSH-JLB<br><br>**DECLARATION OF NICOLE SLOCUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: September 17, 2024<br>Courtroom: 3B – 3rd Floor<br>Judge: Hon. Robert S. Huie |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

SLOCUM DECLARATION ISP DEFENDANT'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:24-CV-01357-RSH-JLB

I, Nicole Slocum, hereby declare and state as follows:

1. I am the People Operations Lead at Palantir Technologies Inc. I have held that position since July 2017. As Lead of Palantir's People Operations Team, my team manages internal human resources operations, including the creation, management, and storage of employment-related documents, including, but not limited to, offer letters and arbitration agreements.

2. When Palantir Technologies Inc. hires new employees, they sign certain paperwork with Palantir Technologies such as offer letters and arbitration agreements.

3. When Jefferey Davidson was hired, he signed paperwork as part of his employment. This included an Arbitration Agreement. A true and correct copy of Palantir Technologies Inc. Arbitration Agreement signed by Jeffrey Davidson on May 18, 2021 is attached hereto as **Exhibit 1**.

4. At the time Jeffrey Davidson was hired, he resided in Washington State, which is why the Agreement cited to Washington as the venue for arbitration and included a choice of law provision for Washington Law.

5. Jeffrey Davidson signed a Remote Worker Agreement when he moved to California. A true and correct copy of Palantir Technologies Inc. Remote Worker Agreement signed by Jeffrey Davidson on February 3, 2023 is attached hereto as **Exhibit 2**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 6, 2024 in El Dorado Hills, California.



Nicole Slocum

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

SLOCUM DECLARATION ISO DEFENDANT'S
MOTION TO COMPEL ARBITRATION
CASE NO. 3:24-CV-01357-RSH-JLB

# **DEFENDANT'S INDEX OF EXHIBITS TO SLOCUM DECLARATION**

| Exhibit # | Document Title | Pages |
|---|---|---|
| Slocum – 1 | Palantir Technologies Inc. Arbitration Agreement signed by Jeffrey Davidson | 1-5 |
| Slocum – 2 | Palantir Technologies Inc. Remote Worker Agreement signed by Jeffrey Davidson | 6-8 |

# EXHIBIT 1

Exhibit 1
Page 1

<u>EXHIBIT B</u>

## PALANTIR TECHNOLOGIES INC.
## ARBITRATION AGREEMENT

As a condition of my employment with Palantir Technologies Inc., its subsidiaries, affiliates, successors or assigns (together, "**Palantir**" or the "**Company**"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following provisions of this Palantir Arbitration Agreement (this "**Agreement**"):

1. ARBITRATION AND EQUITABLE RELIEF

    A. *Arbitration*. In consideration of my employment with the Company, its promise to arbitrate all employment-related disputes, and my receipt of the compensation, pay raises, and other benefits paid to me by the Company, at present and in the future, I agree that any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder, or benefit plan of the Company, in their capacity as such or otherwise), arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company, including any breach of this Agreement, shall be subject to binding arbitration under the arbitration provisions set forth in the Revised Code of Washington (RCW) Title 7, Chapter 7.04A, the Uniform Arbitration Act (the "**Act**"), and pursuant to Washington and federal law, and shall be brought in my individual capacity in arbitration, and not as a plaintiff or class member in any purported class or representative proceeding. The Federal Arbitration Act shall continue to apply with full force and effect notwithstanding the application of procedural rules set forth in the Act. **Disputes that I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include any statutory claims under local, state, or federal law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Sarbanes-Oxley Act, the Worker Adjustment and Retraining Notification Act, the California Fair Employment and Housing Act, the Family and Medical Leave Act, the California Family Rights Act, the California Labor Code, the RCW Title 49, the Washington Administrative Code Title 162, claims of harassment, discrimination, and wrongful termination, and any statutory or common law claims. Notwithstanding the foregoing, I understand that nothing in this Agreement constitutes a waiver of my rights under Section 7 of the National Labor Relations Act.** I further understand that this agreement to arbitrate also applies to any disputes that the Company may have with me.

    B. *Procedure*. I agree that any arbitration will be administered by Judicial Arbitration & Mediation Services, Inc. ("**JAMS**"), pursuant to its employment arbitration rules & procedures (the "**JAMS Rules**"), which are available at http://www.jamsadr.com/rules-employment-arbitration/ and from People Operations. I agree that the arbitrator shall have the power to decide any motions brought by any party to the arbitration, including motions for summary judgment and/or adjudication, and motions to dismiss and demurrers, applying the standards set forth under Washington rules of Civil Procedure. I agree that the arbitrator shall issue a written decision on the merits. I also agree that the arbitrator shall have the power to award any remedies available under applicable law, and that the arbitrator shall award attorneys' fees and costs to the prevailing party, where provided by applicable law. I agree that the decree

Exhibit 1
Page 2

or award rendered by the arbitrator may be entered as a final and binding judgment in any court having jurisdiction thereof. I understand that the Company will pay for any administrative or hearing fees charged by the arbitrator or JAMS except that I shall pay any filing fees associated with any arbitration that I initiate, but only so much of the filing fees as I would have instead paid had I filed a complaint in a court of law. I agree that the arbitrator shall administer and conduct any arbitration in accordance with Washington law, including the RCW Titles 4 and 12 (Civil Procedure) and the RCW Title 5 (Evidence), and that the arbitrator shall apply substantive and procedural Washington law to any dispute or claim, without reference to rules of conflict of law. To the extent that the JAMS rules conflict with Washington law, Washington law shall take precedence. I agree that any arbitration under this Agreement shall be conducted in King County, Washington.

C. *Remedy*. Except as provided by the Act and this Agreement, arbitration shall be the sole, exclusive, and final remedy for any dispute between me and the Company. Accordingly, except as provided for by the Act and this Agreement, neither I nor the Company will be permitted to pursue court action regarding claims that are subject to arbitration.

D. *Administrative Relief*. I understand that this Agreement does not prohibit me from pursuing an administrative claim with a local, state, or federal administrative body or government agency that is authorized to enforce or administer laws related to employment, including, but not limited to, the Seattle Office for Civil Rights, the Washington State Human Rights Commission , the Equal Employment Opportunity Commission, the National Labor Relations Board, or the Workers' Compensation Board. This Agreement does, however, preclude me from pursuing court action regarding any such claim, except as required by law.

E. *Voluntary Nature of Agreement*. I acknowledge and agree that I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else. I acknowledge and agree that I have received a copy of the text of the RCW Title 49.44.140 in <u>Exhibit 1 to this Agreement.</u>. I further acknowledge and agree that I have carefully read this Agreement and that I have asked any questions needed for me to understand the terms, consequences, and binding effect of this Agreement and fully understand it, including that ***I am waiving my right to a jury trial***. Finally, I agree that I have been provided an opportunity to seek the advice of an attorney of my choice before signing this Agreement.

F. *Confidentiality*. I acknowledge and agree that all aspects of an arbitration pursuant to this Agreement, including the hearing and recording of the proceeding, are confidential and not open to the public, except: (i) to the extent Palantir and I agree otherwise in writing; (ii) as may be appropriate in any subsequent proceeding between myself and Palantir; (iii) as may be necessary in connection with a court application for a preliminary remedy or a judicial challenge to an arbitration award or its enforcement; (iv) as may otherwise be necessary in response to a governmental agency or compulsory legal process; (v) as required by the Arbitrator in appropriate circumstances; or (vi) as required by law to ensure that this agreement to arbitrate is enforceable. Further, I agree that all settlement negotiations and mediations shall be confidential.

2. **GOVERNING LAW; CONSENT TO PERSONAL JURISDICTION**. This Agreement will be governed by the laws of the State of Washington without regard to Washington's conflicts of law

rules that may result in the application of the laws of any jurisdiction other than Washington. To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal and exclusive jurisdiction and venue of the state and federal courts located in Washington for any lawsuit filed against me by the Company.

   3. **ASSIGNABILITY.** This Agreement will be binding upon my heirs, executors, assigns, administrators, and other legal representatives, and will be for the benefit of the Company, its successors, and its assigns. There are no intended third-party beneficiaries to this Agreement, except as may be expressly otherwise stated. Notwithstanding anything to the contrary herein, Palantir may assign this Agreement and its rights and obligations under this Agreement to any successor to all or substantially all of Palantir's relevant assets, whether by merger, consolidation, reorganization, reincorporation, sale of assets or stock, or otherwise.

   4. **ENTIRE AGREEMENT.** This Agreement, together with the Exhibits herein, the Proprietary Information and Invention Assignment Agreement between me and the Company, and any executed written offer letter between me and the Company, to the extent such materials are not in conflict with this Agreement, sets forth the entire agreement and understanding between the Company and me with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions, or representations between us, including, but not limited to, any representations made during my interview(s) or relocation negotiations. I represent and warrant that I am not relying on any statement or representation not contained in this Agreement. Any subsequent change or changes in my duties, salary, or compensation will not affect the validity or scope of this Agreement.

   5. **SEVERABILITY.** If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.

   6. **MODIFICATION, WAIVER.** No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the CEO of Palantir and me. Waiver by Palantir of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

   7. **SURVIVORSHIP.** The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

Date: May-18-2021

Signature: *DocuSigned by:* /s/ (970BBBF80B6345E...)

Jeffrey Davidson
Name of Employee (typed or printed)

# EXHIBIT 1

## REVISED CODE OF WASHINGTON TITLE 49.44.140

(1) A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

(2) An employer shall not require a provision made void and unenforceable by subsection (1) of this section as a condition of employment or continuing employment.

(3) If an employment agreement entered into after September 1, 1979, contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work preformed [performed] by the employee for the employer.

# EXHIBIT 2

Exhibit 2
Page 6

**Palantir**

PALANTIR TECHNOLOGIES INC.

1200 17th Street, Floor 15
Denver, CO 80202

February 3, 2023
Palantir Technologies Inc.

# REMOTE WORKER AGREEMENT

Jeff Davidson

Dear Jeff,

This Remote Worker Agreement (the "Agreement") outlines the terms and conditions for your remote working arrangement with Palantir Technologies Inc. (the "Company"), and supersedes any prior agreements or understandings between you and the Company that are inconsistent with its terms. Approval of your remote arrangement is contingent upon signing of this Agreement.

**At-Will Employment**: This Agreement does not change your status as an "at will" employee nor does it create a contract of employment between you and the Company for any specified period. Your employment with the Company continues to be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause, and with or without notice to the other, and Company may require you to return to your origin office as needed for business reasons.

**REMOTE WORKING LOCATION:** 72 Half Moon Bnd, Coronado, CA 92118, United States of America

("Remote Work Location"), or an updated address that you provide

**INTENDED DURATION:** Beginning on February 16, 2023 (the "Effective Date") through Indefinite.

**POSITION:** Sales

**REPORTING TO:** Ganesh Nambiar

**Employer:** You will remain an employee of the Company for all purposes for the duration of the remote period.

**Payroll**: As of the Effective Date, you will remain on US payroll and benefits. As a condition of your remote working arrangement, you may be required to sign an updated PIIA. The Company shall maintain responsibility for payment of all salary and benefits, and shall fulfill such responsibility in accordance with the applicable laws of the Remote Work Location.

**Availability and Duties**: You agree to be online and available during regular, full-time working hours, as discussed and agreed with your Lead, for communication through standard Company methods (e.g. email, slack, phone, etc.). Any scheduling changes or absences must be discussed and approved in advance, and in writing.

**Obligations**: You must maintain a satisfactory level of work performance, and foster and maintain a home working environment that is conducive to performing well. This means that you cannot also be serving as your child's or

Exhibit 2
Page 7

children's childcare provider, or performing side work or extracurricular activities, during working hours. During the remote working period, you must also remove all personal belongings from the office (e.g., desktop, cubbies etc.), to allow others to utilize those spaces.

**Travel**: You agree to travel to and report into the Company's office locations, or other designated working locations, as instructed by your Lead and as necessary for the performance of your job duties. In accordance with its then current expense policies, the Company will pay for or reimburse travel costs in accordance with its then current Travel and Expense policy. Please ensure travel is booked and expensed in accordance with our policy in place from time to time. Note that if you want to return to a Palantir office location for non-business related team or Company events, you will be expected to personally incur the travel and accommodation costs.

**Health and Safety**: You agree to maintain a healthy and safe working environment, with a proper ergonomic set up.

**Information Security and Confidentiality**: You further agree that your home office or workstation will be set up to support your confidentiality obligations to the Company and ensure good information security practices. In particular, you will ensure the security of all Company documents, records, designs, plans, policies, know-how, ideas, information, equipment and the like. You understand and agree the terms of all Company policies, your PIIA and NDA, shall continue to apply in full force and effect to the remote working arrangement.

**Home Expenses**: The Company will provide you a flat monthly payment of $50 USD to cover or defray the cost of your home Internet service. Please note, however, that certain benefits and perquisites that you are eligible to receive in the office – such as meal, snack and drink services, fitness services, massages, etc. – are not eligible for expense reimbursement.

**Modification**: If the need arises to amend this Agreement, the Company will make an effort to reach new, mutually agreeable terms. However, your remote working arrangement is a privilege voluntarily granted by the Company. It is not an entitlement or guarantee, and this Agreement may be changed, canceled or modified from time to time, at the Company's sole discretion. The Company may review the appropriateness of the remote working arrangement from time to time, including but not limited to due to a decline in your performance.

We hope that you have an enjoyable and productive time during your remote working period. Remember that the People Team is available to give you any support you need.


Best regards,


People Team
Acknowledged and agreed:

DocuSigned by:

*Jeff Davidson*
————3D4F3A759E414E1...
Employee Name


Feb-03-2023
_____
Date

Exhibit 2
Page 8