Michelle B. Baker, Esq. (SBN 199130)
Kelsey Aliabadi, Esq. (SBN 343804)
BAKER LAW GROUP, LLP
4225 Executive Square, Suite 600
La Jolla, California 92037
Telephone: (858) 452-0093
E-mail: michelle@bakerllp.com

*Attorneys for Plaintiff Jeffrey Davidson*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY DAVIDSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PALANTIR TECHNOLOGIES INC., a Delaware Corporation; DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No.: 3:24-cv-01357-RSH-JLB<br><br>**DECLARATION OF JEFFREY DAVIDSON IN SUPPORT OF HIS OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>*Filed concurrently with Plaintiff's Memorandum of Points and Authorities in Support of his Opposition to Defendant Palantir Technologies Inc.'s Motion to Compel Arbitration and Stay Proceedings Pending Arbitration*<br><br>Date:　September 17, 2024<br>Ctrm:　3B – 3rd Floor<br>Judge:　Hon. Robert S. Huie |

1

## DECLARATION OF JEFFREY DAVIDSON

I, Jeffrey Davidson, declare and state as follows:

1. I am a named party in the above-entitled action. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2. I was hired by Palantir Technologies, Inc. ("Defendant") in May 2021. At the time, I was living in the state of Washington.

3. In connection with my hiring and as a condition of my employment, Defendant required me to sign an offer letter ("WA Offer Letter") which also included a Proprietary Information and Inventions Agreement ("PIIA") and an arbitration agreement ("WA Arb. Agreement"). A true and correct copy of the WA Offer Letter, PIIA and WA Arb. Agreement is attached hereto as **Exhibit 1.**

4. By October 2022, I moved from Washington and my residence was updated with Defendant to reflect San Diego, California. At that point, I was working for Defendant as a California employee.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed on August 30, 2024, at San Diego, California.

_____
Jeffrey Davidson

## INDEX OF EXHIBITS TO DAVIDSON DECLARATION

| Exhibit # | Document Title | Pages |
|---|---|---|
| Davidson – 1 | Offer Letter, PIIA, WA Arb. Agreement signed by Plaintiff Jeffrey Davidson | 1-17 |

# EXHIBIT 1

Plaintiff's Exhibit 1
Page 1

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

# PALANTIR TECHNOLOGIES INC.

May 17, 2021

Jeffrey Davidson

Dear Jeffrey:

Palantir Technologies Inc. (the "Company") is pleased to offer you full-time exempt employment working remotely from Washington on the following terms:

1. **Position**. Your initial title will be Sales. The Company may, in its sole discretion, add, remove or otherwise update the list of agencies that you engage with on behalf of the Company or earn any incentive compensation for, upon written notice to you at any time. While you render services to the Company, you will not engage in any other employment, consulting or other business activity (whether full-time or part-time) directly related to the business in which the Company is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that would create a conflict of interest with the Company. Similarly, you agree not to bring any third-party confidential information to the Company, including that of your former employer, and that you will not in any way utilize any such information in performing your duties for the Company. By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.

2. **Cash Compensation**. Your annual base salary shall be $150,000, less applicable withholdings, payable in accordance with the Company's standard payroll schedule ("Base Salary"), and you are also eligible to earn incentive compensation based on the completion of the Sales, as detailed in the Incentive Compensation Plan (Commercial) which is attached hereto as **Annex A** (the "Plan"). Your compensation is subject to adjustment pursuant to the Company's employee compensation policies in effect from time to time.

3. **Employee Benefits**. In addition, as a regular full-time employee you will be eligible for various benefits offered to similarly situated Palantir employees in accordance with the terms of Palantir's policies and benefit plans. Among other things, these benefits currently include medical and dental insurance, life insurance, and a 401(k) retirement plan. In addition, you will be eligible for paid vacation in accordance with the Company's vacation policy, as in effect from time to time. The eligibility requirements and other information regarding these benefits are set forth in more detailed documents, which will be given to you at the start of employment and which are available at any time from People Operations.

4. **Restricted Stock Units**. In connection with the commencement of your employment with the Company in the United States, it will be recommended that, subject to the approval of the Company's Board of Directors, the Compensation, Nominating and Governance Committee of the Board of Directors or their authorized delegate (the "Board"), you be awarded

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

restricted stock units ("RSUs") covering such number of shares of the Company's common stock determined by dividing (A) $80,000 by (B) the average closing price of Palantir's Class A common stock in the public markets for a recent 30 calendar day period ending on a date prior to the anticipated date of grant of such RSUs by the Board, as determined by the Company at its sole discretion, rounded up to the nearest full share, pursuant to the Company's equity incentive plan then in use (the "Plan"). The RSUs will be subject to the terms and conditions applicable to RSUs granted under the Plan and to the terms and conditions of the applicable award agreement, as described in those documents. We expect that the vesting conditions of your RSUs will include a service-based requirement, subject to the terms approved by the Board. With respect to the service-based requirement, we anticipate that your RSUs will be scheduled to meet such requirement as to twenty-five percent (25%) of the shares on the quarterly vesting date on or following your one (1) year employment anniversary date, as determined by the Board, and as to one-sixteenth (1/16th) of the shares each quarter thereafter, on such applicable quarterly vesting dates and as otherwise determined by the Board, subject to your continuous service to the Company and to the terms and conditions described in the applicable award agreement. However, no RSUs shall vest until and unless you remain an employee or other applicable service provider to the Company through the applicable quarterly vesting date associated with, and that occurs on or after, your one (1) year continuous employment anniversary date. Following Board approval of this recommendation, you will receive a copy of the award agreement and the Plan for your review and reference.

5. **Proprietary Information and Inventions Agreement; Arbitration Agreement**. Like all Company employees, you will be required, as a condition of your employment with the Company, to sign the Company's standard Proprietary Information and Inventions Agreement, a copy of which is attached hereto as **Exhibit A**. You will also be required to sign the Company's standard Arbitration Agreement, a copy of which is attached hereto as **Exhibit B**. In short, in the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree to an arbitration in which (i) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (ii) we agree that all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion, and (iv) the arbitration shall provide for adequate discovery.

6. **Employment Relationship**. Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause, and with or without notice. Any contrary representations that may have been made to you are superseded by this letter agreement. This is the full and complete agreement between you and the Company on this term. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and a duly authorized officer of the Company (other than you).

7. **Taxes**. All forms of compensation referred to in this letter agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law. You agree that the Company does not have a duty to design its compensation

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company or its Board of Directors related to tax liabilities arising from your compensation.

8. **Interpretation, Amendment and Enforcement**. This letter agreement, the Incentive Compensation Plan (Annex A), the Proprietary Information and Invention Assignment Agreement (Exhibit A), and the Arbitration Agreement (Exhibit B) constitute the complete agreement between you and the Company, contain all of the terms of your employment with the Company and supersede any prior agreements, representations or understandings (whether written, oral or implied) between you and the Company. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company. The terms of this letter agreement and the resolution of any disputes as to the meaning, effect, performance or validity of this letter agreement or arising out of, related to, or in any way connected with, this letter agreement, your employment with the Company or any other relationship between you and the Company (the "Disputes") will be governed by the law of the state in which your employment is initially based (the "Home State"), excluding laws relating to conflicts or choice of law. You and the Company submit to the exclusive personal jurisdiction of the federal and state courts located in the Home State in connection with any Dispute or any claim related to any Dispute.

9. **Electronic Delivery of Documents.** By signing this letter agreement, you agree that we can deliver any documents related to any of our equity incentive plans and any awards under such plans, including any prospectuses, reports, and any other related information, to you by electronic delivery or other on-line means (including by the delivery of a link to a Company intranet or to the Internet site of a third party involved in administration of our equity program, the delivery of the documents via e-mail, or any other means of electronic delivery specified by the Company) and you acknowledge that you are not required to consent to electronic delivery of documents and are signing this letter agreement voluntarily. At your request (by writing to the Company with such request at: Palantir Technologies Inc., c/o Equity Team, 1555 Blake Street, Suite 250, Denver, Colorado 80202), we will send you a paper copy of any applicable documents that were delivered electronically at no cost to you. Your consent will be effective until such time that you explicitly revoke it. You can revoke your consent to the electronic delivery of documents or change the electronic mail address to which such documents are to be delivered at any time by notifying us of such revoked consent or revised e-mail address by notifying the Company as specified above.

10. **Background Check.** Offers of employment are contingent upon the completion of an acceptable background check and/or reference check.

11. **Employment Eligibility**. For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States. Such documentation must be provided to the Company within three (3) business days of your date of hire, or your employment relationship with the Company may be terminated.

\* \* \* \* \*

Plaintiff's Exhibit 1

Page 4

We hope that you will accept our offer to join the Company. You may indicate your agreement with these terms and accept this offer by signing and dating this letter agreement and the enclosed Proprietary Information and Inventions Agreement and the Arbitration Agreement and returning them to People Operations.

Official Start Date: June 7, 2021

Very truly yours,

PALANTIR TECHNOLOGIES INC.

I accept this offer of employment with Palantir and agree to the terms and conditions outlined in this letter:

*DocuSigned by:*
*970BBBF80B6345...* Signature of Jeffrey Davidson

Dated: May-18-2021

**Attachment**

Annex A: Incentive Compensation Plan
Exhibit A: Proprietary Information and Inventions Agreement
Exhibit B: Arbitration Agreement

# ANNEX A

# 10 PAGE INCENTIVE COMPENSATION PLAN

# INTENTIONALLY EXCLUDED

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

**Ο Palantir**

# EXHIBIT A

## PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

The following confirms and memorializes the Proprietary Information and Inventions Agreement (this "**Agreement**"), that Palantir Technologies Inc., a Delaware corporation (the "**Company**") and ____Jeffrey Davidson____ ("**me**" or "**I**") have had since the commencement of my employment with the Company in any capacity and that is and has been a material part of the consideration for my employment by the Company. In this Agreement "**Group**" means the Company and any of its subsidiaries worldwide.

1. <u>No Conflicting Obligations</u>. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement or my employment with the Company. I will not violate any agreement with or rights of any third party or, except as expressly authorized by the Company in writing hereafter, use or disclose my own or any third party's confidential information or intellectual property when acting within the scope of my employment or otherwise on behalf of the Company and/or Group. Further, I have not retained anything containing any confidential information of a prior employer or other third party, whether or not created by me.

2. <u>Ownership</u>. The Company shall own all rights, title and interest (including patent rights, copyrights, trade secret rights, mask work rights, *sui generis* database rights and all other intellectual and industrial property rights of any sort throughout the world) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by me during my employment with the Company (collectively "**Inventions**"); provided that this foregoing sentence shall be interpreted and enforced only to the fullest extent allowed by Washington Title 49.44.140 (which is attached as <u>Appendix A</u>). I will promptly disclose all Inventions to the Company, and I will also disclose anything I believe is excluded by Title 49.44.140 so that the Company can make an independent assessment. I hereby make all assignments necessary to accomplish the foregoing. I shall further assist the Company, at the Company's expense, to further evidence, record and perfect such assignments, and to perfect, obtain, maintain, enforce, and defend any rights specified to be so owned or assigned. I hereby irrevocably designate and appoint the Company as my agent and attorney-in-fact, coupled with an interest and with full power of substitution, to act for and in my behalf to execute and file any document and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by me. If I wish to clarify that something created by me prior to my employment that relates to the Company's actual or proposed business is not within the scope of the foregoing assignment, I have listed it on <u>Appendix B</u> in a manner that does not violate any third party rights. Without limiting Section 1 of this Agreement or the Company's other rights and remedies, if, when acting within the scope of my employment or otherwise on behalf of the Company, I use or (except pursuant to this Section 2 of this Agreement) disclose my own or any third party's confidential information or intellectual property (or if any Invention cannot be fully made, used, reproduced, distributed and otherwise exploited without using or violating the foregoing), the Company will have and I hereby grant to the Company a perpetual, irrevocable, worldwide royalty-free, non-exclusive, sublicensable right and license to exploit and exercise all such confidential information and intellectual property rights.

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

3. <u>Moral Rights</u>. To the extent allowed by applicable law, Section 2 of this Agreement includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights," "artist's rights," "droit moral," or the like (collectively "**Moral Rights**"). To the extent I retain any such Moral Rights under applicable law, I hereby ratify and consent to any action that may be taken with respect to such Moral Rights by or authorized by the Company and agree not to assert any Moral Rights with respect thereto. I will confirm any such ratifications, consents and agreements from time to time as requested by the Company.

4. <u>Proprietary Information</u>. I agree that all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees, price lists, pricing structures, marketing and sales information, business plans or dealings, designs, formulae or research activities) I develop, learn or obtain during my employment that relate to the Company and/or the Group, or the business or demonstrably anticipated business of the Company and/or the Group, or that are received by or for the Company and/or the Group in confidence, constitute "**Proprietary Information**." I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information. However, I shall not be obligated under this Section 4 with respect to information I can document is or becomes readily publicly available without restriction through no fault of mine. Upon termination of my employment or when requested by the Company, I will promptly return to the Company all items containing or embodying Proprietary Information (including all copies), except that I may keep my personal copies of (i) my compensation records, (ii) materials received solely in my capacity as a shareholder or optionholder of the Company (if then applicable), and (iii) this Agreement. I also recognize and agree that I have no expectation of privacy with respect to the Company's telecommunications, networking or information processing systems (including, without limitation, stored computer files, email messages and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored at any time without notice.

5. <u>Non-Competition During Employment</u>. I agree that during the course of my employment, I will not, in the same or materially similar capacity as I work for the Company, without the prior written consent of the Company, whether paid or not: (i) serve as a partner, principal, licensor, licensee, employee, consultant, officer, director, manager, agent, affiliate, representative, advisor, promoter, associate, investor, or otherwise for, (ii) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, or (iii) build, design, finance, acquire, lease, operate, manage, control, invest in, work or consult for or otherwise join, participate in or affiliate myself with, any business whose business, products or operations are in any respect competitive with the Company's and/or Group's business. Should I obtain other, non-competitive employment during my employment with the Company, I agree to provide written notification to the Company as to the name and address of my new employer, the position that I expect to hold, and a general description of my duties and responsibilities, at least three (3) business days prior to starting such employment.

6. <u>Restrictive Covenants</u>.

    *6.1    Customer and Third Party Non-Solicitation*

(a) I agree that for a period of twenty four (24) months immediately following the termination of my employment with the Company, whether I resign voluntarily or am

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

terminated by the Company involuntarily, I shall not contact, or cause to be contacted, directly or indirectly, or engage in any form of oral, verbal, written, recorded, transcribed, or electronic communication with any Customer for the purposes of conducting business that is competitive or similar to that of the Company or for the purpose of disadvantaging the Company's and/or the Group's business in any way. For the purposes of this Agreement, "**Customer**" shall mean all persons or entities that have used or inquired of the Company's or the Group's services at any time during the two-year period preceding the termination of my employment with the Company. I acknowledge and agree that the Customers did not use or inquire of the Company's and/or Group's services solely as a result of my efforts, and that the efforts of other Company personnel and resources are responsible for the Company's relationship with the Customers. I further acknowledge and agree that the identity of the Customers is not readily ascertainable or discoverable through public sources, and that the Company's list of Customers was cultivated with great effort and secured through the expenditure of considerable time and money by the Company.

(b)  I agree that for a period of twenty-four (24) months immediately following the termination of my employment with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I will not solicit, encourage, or induce, or cause to be solicited, encouraged or induced, directly or indirectly, any franchisee, joint venture, supplier, vendor or contractor who conducted business with the Company and/or the Group at any time during the two-year period preceding the termination of my employment with the Company, to terminate or adversely modify any business relationship with the Company and/or the Group or not to proceed with, or enter into, any business relationship with the Company and/or the Group, nor shall I otherwise interfere with any business relationship between the Company and/or the Group and any such franchisee, joint venture, supplier, vendor or contractor.

(c)  I acknowledge that I will derive significant value from the Company's agreement to provide me with the Proprietary Information of the Company to enable me to optimize the performance of my duties to the Company. I further acknowledge that my fulfillment of the obligations contained in this Agreement, including, but not limited to, my obligation neither to disclose nor to use the Company's Proprietary Information other than for the Company's exclusive benefit and my obligations not to solicit contained in Sections 6.1-6.2 herein, is necessary to protect the Company's Proprietary Information and, consequently, to preserve the value and goodwill of the Company.

6.2  *Employee Non-Solicitation.* I agree that until twenty-four (24) months immediately following the termination of my employment with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I will not directly or indirectly solicit, or recruit, or attempt to solicit, or recruit, any employee of the Company and/or the Group to leave their employment with the Company and/or the Group, nor will I contact any employee of the Company and/or the Group, or cause an employee of the Company and/or the Group to be contacted, for the purpose of leaving employment with the Company and/or the Group.

6.3  *Non-Competition.* I agree that until twelve (12) months immediately following the termination of my employment with the Company, whether I resign voluntarily or am terminated by the Company involuntarily, I will not engage in any Prohibited Activity. For purposes of this Section 6.3, "**Prohibited Activity**" is an activity in which I perform the job functions that I performed during my employment with Company, directly or indirectly, in whole or part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, intern or any other similar capacity for an entity engaged

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

in the same or similar business as the Company and/or the Group, including those engaged in the business of developing and selling analytical software, whether existing or planned. I understand and agree that the restraint imposed under this Section 6.3 is necessary and reasonable to protect the Company's legitimate business interests and not unduly harsh or oppressive. Nothing herein shall prevent me from taking employment with an analytical software company where I am not performing the same functions, directly or indirectly, as set forth in this Section 6.3.

      6.4  *Acknowledgments and Representations.* I acknowledge that the Company sells and provides its products and services worldwide and agree that the time periods, geographic regions and scope limitations referred to in Sections 6.1-6.3 above are reasonable and valid in light of the nature and extent of the business conducted by the Company, especially in light of the Company's need to protect its Proprietary Information and the international scope and nature of the Company's business. I also represent that my experience and capabilities are such that the enforcement of the foregoing covenants will not prevent me from working in my occupation, from earning a livelihood, and acknowledge that it would cause the Company serious and irreparable injury and cost if I were to use my knowledge in competition with the Company or otherwise breach the obligations contained in this Agreement. If the scope of any of the restrictions set forth above are deemed by any court or tribunal to be too broad to permit enforcement of such restriction to its full extent, then such restriction shall be enforced to the maximum extent permitted by law, and the Company and I hereby consent and agree that such scope may be judicially modified accordingly in any proceeding brought to enforce such restriction. In the event of my breach or violation of Sections 6.1 – 6.3, or good faith allegation by the Company of my breach or violation of this Sections 6.1 – 6.3, the relevant restricted period(s) set forth in Sections 6.1 – 6.3 shall be tolled until such breach or violation, or dispute related to an allegation by the Company that I have breached or violated Sections 6.1 – 6.3, as applicable, has been duly cured or resolved, as applicable.

      7.  <u>At-Will Employment</u>. I agree that this Agreement is not an employment contract for any particular term and that I have the right to resign and Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause, and with or without notice. In addition, this Agreement does not purport to set forth all of the terms and conditions of my employment, and, as an employee of the Company, I have obligations to the Company which are not set forth in this Agreement. However, the terms of this Agreement govern over any inconsistent terms and can only be changed by a subsequent written agreement signed by the CEO of the Company. The headings used in this Agreement are for reference purposes only and should have no effect on the interpretation of the Agreement.

      8.  <u>Continuing Obligations</u>. I agree that my obligations under paragraphs 2, 3, 4, and 6 of this Agreement shall continue in effect after termination of my employment, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary on my part, and that the Company is entitled to communicate my obligations under this Agreement to any future employer or potential employer of mine. My obligations under paragraphs 2, 3 and 4 also shall be binding upon my heirs, executors, assigns, and administrators and shall inure to the benefit of the Company, its subsidiaries, successors and assigns.

      9.  <u>Governing Law</u>. Any dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the State of Washington, without regard to the conflict of laws provisions thereof. I further agree that if one or more provisions of this Agreement are held to be illegal or unenforceable under Washington law, such illegal or

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

unenforceable portion(s) shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable in accordance with its terms. This Agreement is fully assignable and transferable by the Company, but any purported assignment or transfer by me is void. I also understand that any breach of this Agreement will cause irreparable harm to the Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond.

10. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions or representations between the parties regarding such subject matter. This Agreement may be executed in counterparts and by facsimile, and each counterpart and facsimile shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.

**I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS WHICH IT IMPOSES UPON ME WITHOUT RESERVATION. NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT, WHICH I SIGN VOLUNTARILY AND FREELY.**

DocuSigned by:
*[signature]*
970BBBF80B6345E...

Employee Signature

Jeffrey Davidson

Employee Name (Printed)

May-18-2021

Date

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

## APPENDIX A

### (Applies only to employees with a Washington Home State)

**REVISED CODE OF WASHINGTON TITLE 49.44.140**

(1) A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

(2) An employer shall not require a provision made void and unenforceable by subsection (1) of this section as a condition of employment or continuing employment.

(3) If an employment agreement entered into after September 1, 1979, contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer.

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

## APPENDIX B

PRIOR MATTER

N/A

7

EXHIBIT B

**PALANTIR TECHNOLOGIES INC.
ARBITRATION AGREEMENT**

As a condition of my employment with Palantir Technologies Inc., its subsidiaries, affiliates, successors or assigns (together, "**Palantir**" or the "**Company**"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following provisions of this Palantir Arbitration Agreement (this "**Agreement**"):

1. ARBITRATION AND EQUITABLE RELIEF

    A. *Arbitration*. In consideration of my employment with the Company, its promise to arbitrate all employment-related disputes, and my receipt of the compensation, pay raises, and other benefits paid to me by the Company, at present and in the future, I agree that any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder, or benefit plan of the Company, in their capacity as such or otherwise), arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company, including any breach of this Agreement, shall be subject to binding arbitration under the arbitration provisions set forth in the Revised Code of Washington (RCW) Title 7, Chapter 7.04A, the Uniform Arbitration Act (the "**Act**"), and pursuant to Washington and federal law, and shall be brought in my individual capacity in arbitration, and not as a plaintiff or class member in any purported class or representative proceeding. The Federal Arbitration Act shall continue to apply with full force and effect notwithstanding the application of procedural rules set forth in the Act. **Disputes that I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include any statutory claims under local, state, or federal law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the Sarbanes-Oxley Act, the Worker Adjustment and Retraining Notification Act, the California Fair Employment and Housing Act, the Family and Medical Leave Act, the California Family Rights Act, the California Labor Code, the RCW Title 49, the Washington Administrative Code Title 162, claims of harassment, discrimination, and wrongful termination, and any statutory or common law claims. Notwithstanding the foregoing, I understand that nothing in this Agreement constitutes a waiver of my rights under Section 7 of the National Labor Relations Act.** I further understand that this agreement to arbitrate also applies to any disputes that the Company may have with me.

    B. *Procedure*. I agree that any arbitration will be administered by Judicial Arbitration & Mediation Services, Inc. ("**JAMS**"), pursuant to its employment arbitration rules & procedures (the "**JAMS Rules**"), which are available at http://www.jamsadr.com/rules-employment-arbitration/ and from People Operations. I agree that the arbitrator shall have the power to decide any motions brought by any party to the arbitration, including motions for summary judgment and/or adjudication, and motions to dismiss and demurrers, applying the standards set forth under Washington rules of Civil Procedure. I agree that the arbitrator shall issue a written decision on the merits. I also agree that the arbitrator shall have the power to award any remedies available under applicable law, and that the arbitrator shall award attorneys' fees and costs to the prevailing party, where provided by applicable law. I agree that the decree

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

or award rendered by the arbitrator may be entered as a final and binding judgment in any court having jurisdiction thereof. I understand that the Company will pay for any administrative or hearing fees charged by the arbitrator or JAMS except that I shall pay any filing fees associated with any arbitration that I initiate, but only so much of the filing fees as I would have instead paid had I filed a complaint in a court of law. I agree that the arbitrator shall administer and conduct any arbitration in accordance with Washington law, including the RCW Titles 4 and 12 (Civil Procedure) and the RCW Title 5 (Evidence), and that the arbitrator shall apply substantive and procedural Washington law to any dispute or claim, without reference to rules of conflict of law. To the extent that the JAMS rules conflict with Washington law, Washington law shall take precedence. I agree that any arbitration under this Agreement shall be conducted in King County, Washington.

C. *Remedy*. Except as provided by the Act and this Agreement, arbitration shall be the sole, exclusive, and final remedy for any dispute between me and the Company. Accordingly, except as provided for by the Act and this Agreement, neither I nor the Company will be permitted to pursue court action regarding claims that are subject to arbitration.

D. *Administrative Relief*. I understand that this Agreement does not prohibit me from pursuing an administrative claim with a local, state, or federal administrative body or government agency that is authorized to enforce or administer laws related to employment, including, but not limited to, the Seattle Office for Civil Rights, the Washington State Human Rights Commission , the Equal Employment Opportunity Commission, the National Labor Relations Board, or the Workers' Compensation Board. This Agreement does, however, preclude me from pursuing court action regarding any such claim, except as required by law.

E. *Voluntary Nature of Agreement*. I acknowledge and agree that I am executing this Agreement voluntarily and without any duress or undue influence by the Company or anyone else. I acknowledge and agree that I have received a copy of the text of the RCW Title 49.44.140 in <u>Exhibit 1 to this Agreement.</u>. I further acknowledge and agree that I have carefully read this Agreement and that I have asked any questions needed for me to understand the terms, consequences, and binding effect of this Agreement and fully understand it, including that ***I am waiving my right to a jury trial***. Finally, I agree that I have been provided an opportunity to seek the advice of an attorney of my choice before signing this Agreement.

F. *Confidentiality*. I acknowledge and agree that all aspects of an arbitration pursuant to this Agreement, including the hearing and recording of the proceeding, are confidential and not open to the public, except: (i) to the extent Palantir and I agree otherwise in writing; (ii) as may be appropriate in any subsequent proceeding between myself and Palantir; (iii) as may be necessary in connection with a court application for a preliminary remedy or a judicial challenge to an arbitration award or its enforcement; (iv) as may otherwise be necessary in response to a governmental agency or compulsory legal process; (v) as required by the Arbitrator in appropriate circumstances; or (vi) as required by law to ensure that this agreement to arbitrate is enforceable. Further, I agree that all settlement negotiations and mediations shall be confidential.

2. **GOVERNING LAW; CONSENT TO PERSONAL JURISDICTION**. This Agreement will be governed by the laws of the State of Washington without regard to Washington's conflicts of law

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

rules that may result in the application of the laws of any jurisdiction other than Washington. To the extent that any lawsuit is permitted under this Agreement, I hereby expressly consent to the personal and exclusive jurisdiction and venue of the state and federal courts located in Washington for any lawsuit filed against me by the Company.

**3.   ASSIGNABILITY.**  This Agreement will be binding upon my heirs, executors, assigns, administrators, and other legal representatives, and will be for the benefit of the Company, its successors, and its assigns.  There are no intended third-party beneficiaries to this Agreement, except as may be expressly otherwise stated.  Notwithstanding anything to the contrary herein, Palantir may assign this Agreement and its rights and obligations under this Agreement to any successor to all or substantially all of Palantir's relevant assets, whether by merger, consolidation, reorganization, reincorporation, sale of assets or stock, or otherwise.

**4.   ENTIRE AGREEMENT.**  This Agreement, together with the Exhibits herein, the Proprietary Information and Invention Assignment Agreement between me and the Company, and any executed written offer letter between me and the Company, to the extent such materials are not in conflict with this Agreement, sets forth the entire agreement and understanding between the Company and me with respect to the subject matter herein and supersedes all prior written and oral agreements, discussions, or representations between us, including, but not limited to, any representations made during my interview(s) or relocation negotiations.  I represent and warrant that I am not relying on any statement or representation not contained in this Agreement.  Any subsequent change or changes in my duties, salary, or compensation will not affect the validity or scope of this Agreement.

**5.   SEVERABILITY.**  If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.

**6.   MODIFICATION, WAIVER.**  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in a writing signed by the CEO of Palantir and me.  Waiver by Palantir of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

**7.   SURVIVORSHIP.**  The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

Date: May-18-2021

Signature: *[DocuSigned by: 970BBBF80B6345E...]*

Jeffrey Davidson
Name of Employee (typed or printed)

DocuSign Envelope ID: A05A2F26-C481-4F91-96D2-973B36E3B4B4

# EXHIBIT 1

## REVISED CODE OF WASHINGTON TITLE 49.44.140

(1) A provision in an employment agreement which provides that an employee shall assign or offer to assign any of the employee's rights in an invention to the employer does not apply to an invention for which no equipment, supplies, facilities, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the employer. Any provision which purports to apply to such an invention is to that extent against the public policy of this state and is to that extent void and unenforceable.

(2) An employer shall not require a provision made void and unenforceable by subsection (1) of this section as a condition of employment or continuing employment.

(3) If an employment agreement entered into after September 1, 1979, contains a provision requiring the employee to assign any of the employee's rights in any invention to the employer, the employer must also, at the time the agreement is made, provide a written notification to the employee that the agreement does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the employer was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the employer, or (ii) to the employer's actual or demonstrably anticipated research or development, or (b) the invention results from any work preformed [performed] by the employee for the employer.