UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY DAVIDSON,<br><br>                    Plaintiff,<br><br>v.<br><br>PALANTIR TECHNOLOGIES INC., a Delaware Corporation; and DOES 1-25, inclusive,<br><br>                    Defendants. | Case No.: 24-cv-1357-RSH-JLB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>[ECF No. 5] |

Pending before the Court is a motion to compel arbitration filed by defendant Palantir Technologies Inc. ECF No. 5. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants Defendant's motion.

**I.     BACKGROUND**

    **A.     Procedural History**

On June 28, 2024, plaintiff Jeffrey Davidson filed this lawsuit in San Diego Superior Court against Defendant, his former employer. Defendant sells software for the integration, visualization, and analysis of data. ECF No. 1-2 ¶ 10. Plaintiff worked as a salesperson for Defendant from June 2021 to November 2023. *Id.* ¶¶ 11, 23. He was compensated with a

base salary and sales commissions under an incentive compensation plan. *Id.* ¶ 11. In September 2023, he closed a multi-million-dollar contract. *Id.* ¶ 16. He alleges that instead of fully compensating him under his compensation plan, Defendant compensated him at a lower amount under a different compensation plan to which he had not agreed. *Id.* ¶ 17.

The Complaint brings claims for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) failure to pay wages in violation of California Labor Code § 201; and (4) failure to pay wages upon separation of employment in violation of California Labor Code § 203. *Id.* ¶¶ 29–54.

On July 31, 2024, Defendant removed the case to this Court on the basis of diversity jurisdiction. ECF No. 1.

On August 6, 2024, Defendant filed this motion to compel arbitration. ECF No. 5. The motion is fully briefed. ECF Nos. 6, 7.

**B.    Relevant Agreements**

The Parties entered into numerous agreements relevant to this motion. At the time Plaintiff was hired in May 2021, he was a resident of the State of Washington. ECF No. 6-1 ¶ 2. In connection with his hiring, he signed an offer letter that included, as attachments, an Arbitration Agreement and a Proprietary Information and Inventions Agreement. *Id.*

The Arbitration Agreement provided that, "[i]n consideration of my employment with the Company [and] its promise to arbitrate all employment-related disputes," he "agree[s] that any and all controversies, claims, or disputes with anyone … arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company" shall be subject to binding arbitration. ECF No. 6-1 at 17. The Arbitration Agreement also provided: "[T]his agreement to arbitrate also applies to any disputes that the Company may have with me." ECF No. 6-1 at 17.

The Arbitration Agreement further provided that such arbitration "will be administered by Judicial Arbitration & Mediation Services, Inc. ('JAMS'), pursuant to its employment arbitration rules & procedures," and that the arbitrator would "apply substantive and procedural Washington law to any dispute or claim." *Id.* The Arbitration

1  Agreement recited that it was to be "governed by the laws of the State of Washington," and
2  "to the extent that any lawsuit is permitted under this Agreement, I hereby expressly
3  consent to the personal and exclusive jurisdiction and venue of the state and federal courts
4  located in Washington for any lawsuit filed against me by the Company." *Id.* at 18-19.

5       The Arbitration Agreement also contained a clause providing for severability: "If a
6  court or other body of competent jurisdiction finds, or the Parties mutually believe, any
7  provision of this Agreement, or portion thereof, to be invalid or unenforceable, such
8  provision will be enforced to the maximum extent permissible so as to effect the intent of
9  the Parties, and the remainder of this Agreement will continue in full force and effect." *Id.*
10 at 19.

11      Around October 2022, Plaintiff moved from Washington to San Diego, California.
12 ECF No. 6-1 ¶ 4. In February 2023, he signed a Remote Worker Agreement with
13 Defendant. ECF No. 5-1 at 10-11. The Remote Worker Agreement recited that it "outlines
14 the terms and conditions for your remote working arrangement with Palantir Technologies
15 Inc. (the 'Company') and supersedes any prior agreements or understandings between you
16 and the Company that are inconsistent with its terms." *Id.* at 10. Under a heading entitled
17 "Information Security and Confidentiality," the Remote Worker Agreement stated, "You
18 understand and agree the terms of all Company policies, your PIIA and NDA, shall
19 continue to apply in full force and effect to the remote working arrangement." *Id.* at 11.
20 The Remote Worker Agreement did not specifically mention arbitration or the prior
21 Arbitration Agreement.

22 **II.   LEGAL STANDARD**

23      The Federal Arbitration Act ("FAA") governs arbitration agreements. 9 U.S.C. § 2.
24 The FAA "was enacted . . . in response to widespread judicial hostility to arbitration
25 agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). It "reflect[s]
26 both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that
27 arbitration is a matter of contract[.]'" *Id.* (citations omitted) (quoting *Moses H. Cone Mem'l*
28 *Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA provides that "[a]

1  written provision in . . . a contract evidencing a transaction involving commerce to settle
2  by arbitration a controversy thereafter arising out of such contract . . . shall be valid,
3  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the
4  revocation of any contract[.]" 9 U.S.C. § 2. The FAA "requires courts 'rigorously' to
5  enforce arbitration agreements according to their terms, including terms that specify with
6  whom the parties choose to arbitrate their disputes and the rules under which that
7  arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)
8  (citations omitted).

9       Under the FAA, a party may seek a court order compelling arbitration where another
10 party refuses to arbitrate. 9 U.S.C. § 4. A federal court "must compel arbitration if (1) a
11 valid agreement to arbitrate exists and (2) the dispute falls within the scope of that
12 agreement." *Geier v. m-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016). The party seeking to
13 compel arbitration bears the burden of proving by a preponderance of the evidence the
14 existence of an agreement to arbitrate. *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d
15 1320, 1323 (9th Cir. 2015) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119
16 (9th Cir. 2008)). "[T]he party resisting arbitration bears the burden[] of proving that the
17 claims at issue are unsuitable for arbitration." *Munro v. Univ. of S. Cal.*, 896 F.3d 1088,
18 1091 (9th Cir. 2018) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91
19 (2000)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor
20 of arbitration." *Simula v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Moses H.
21 Cone*, 460 U.S. at 24–25). The court, "upon being satisfied that the issue involved . . . is
22 referable to arbitration, shall on application of one of the parties stay the trial of the action
23 until such arbitration has been had in accordance with the terms of the agreement . . . ." 9
24 U.S.C. § 3.

25 **III.   ANALYSIS**

26      Plaintiff does not dispute entering into the Arbitration Agreement, nor does he
27 dispute that his claims fall within the scope of the Arbitration Agreement. Instead, Plaintiff
28 argues the Arbitration Agreement is unenforceable because: (1) the Arbitration Agreement

was superseded by the Remote Worker Agreement, such that Plaintiff no longer has an obligation to arbitrate; and (2) the Arbitration Agreement is unconscionable. ECF No. 6 at 3–4. The Court addresses these issues in turn.

### A. The Arbitration Agreement and the Remote Worker Agreement

Where parties have entered into two contracts covering the same subject matter, the latter contract supersedes the former as to any inconsistent provisions. *See NLRB v. Int'l Union of Operating Eng'rs*, 323 F.2d 545, 548 (9th Cir. 1963) ("[S]ince the contracts were entered into by the same parties and cover the same subject matter, it is a well settled principle of law that the later contract supersedes the former contract as to inconsistent provisions.") (quoting *In re Ferrero's Estate,* 142 Cal. App. 2d 473, 478 (Ct. App. 1956)) ("A later agreement will supersede an earlier agreement if inconsistent therewith.").[1] The question before the Court, then, is whether the Arbitration Agreement and the Remote Worker Agreement are inconsistent with respect to the duty to arbitrate.

The Arbitration Agreement addresses dispute resolution, while the later Remote Worker Agreement does not. ECF No. 5-1 at 10–11. The two agreements, therefore, are not inconsistent with respect to the duty to arbitrate. *See Oxford Preparatory Acad. v. Edlighten Learning Sols.*, 34 Cal. App. 5th 605, 611 (Ct. App. 2019) (holding that a termination agreement between the parties that did not mention dispute resolution did not supersede the parties' earlier arbitration agreement); *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 638 (Ct. App. 1997) ("Absent any showing that his written employment agreement … was either expressly or implicitly inconsistent with his arbitration obligation … [the plaintiff] may not rely on the written employment agreement's silence about dispute resolution to establish that such agreement superseded his . . . obligation to arbitrate.").

---

[1] Consistent with that rule, the Remote Worker Agreement provides that it "supersedes any prior agreements or understandings between you and the Company that are inconsistent with its terms." ECF No. 5-1 at 10.

Plaintiff also argues that the Remote Worker Agreement implicitly abrogated the Arbitration Agreement by mentioning that certain other prior agreements continue to apply, but not mentioning the Arbitration Agreement among these. Specifically, the Remote Worker Agreement states: "You understand and agree the terms of all Company policies, your PIIA and NDA, shall continue to apply in full force and effect to the remote working arrangement." ECF No. 5-1 at 11. Although this provision does not mention the Arbitration Agreement, it does not disavow the Arbitration Agreement either. Nor, by expressing the intent that "all Company policies" continue to apply, does it create any inconsistency between the Remote Worker Agreement and the duty to arbitrate set forth in the Arbitration Agreement. *Id.* Accordingly, the Remote Worker Agreement does not supersede the Parties' agreement to arbitrate.

### B. Unconscionability

Plaintiff next contends that the Arbitration Agreement is unconscionable. Section 2 of the FAA provides that arbitration clauses may be invalidated based upon the same grounds that exist in law or equity for the revocation of any contract. 9 U.S.C. § 2. Under California law, which the Parties agree applies here, courts may refuse to enforce any contract found "to have been unconscionable at the time it was made" or may "limit the application of any unconscionable clause." Cal. Civ. Code. § 1670.5(a).

Unconscionability involves "a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Procedural and substantive unconscionability "must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Id.* They need not be present in the same degree; "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

The party asserting that a contractual provision is unconscionable bears the burden of proof. *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 911 (2015).

### 1. **Procedural Unconscionability**

"Procedural unconscionability 'concerns the manner in which the contract was negotiated and the circumstances of the parties at that time.'" *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 783 (9th Cir. 2002) (quoting *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (Ct. App. 1999)). Under California law, "[t]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016) (internal quotation marks and citation omitted).

"A determination of whether a contract is procedurally unconscionable focuses on two factors: oppression and surprise." *Ferguson*, 298 F.3d at 783. "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*

The Court begins its oppression analysis by considering "whether the contract is one of adhesion." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 115 (2000)). A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength" and gives "the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 115. "Arbitration contracts imposed as a condition of employment are typically adhesive." *OTO*, 8 Cal. 5th at 126. Here, Defendant drafted the Arbitration Agreement and presented it to Plaintiff on a take-it-or leave it basis as a condition of employment. *See* ECF No. 6-1 ¶ 3 (Davidson Decl.); ECF No. 5-1 at 5 (Arbitration Agreement reciting that it is "a condition of my employment"). Although the

Court does not find other indicia of oppression here, a contract of adhesion itself establishes "a minimal degree of procedural unconscionability such that closer scrutiny of [the agreement's] overall fairness is required." *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 65 (Ct. App. 2020).

Surprise occurs when an agreement "thwarts[s] understanding by hiding the challenged provision, or by using language – for example, complex statements filled with legal jargon – rendering the substance of the challenged provision opaque." *Long Beach Unified Sch. Dist. v. Margaret Williams, LLC*, 43 Cal. App. 5th 87, 104 (Ct. App. 2019). The Arbitration Agreement here does not involve surprise. The nature of the agreement is apparent from the face of the document, the terms are not hidden, and the agreement is not prolix. Plaintiff argues that the Arbitration Agreement is complex and contradictory because it contains a Washington choice-of-law clause and invokes Washington's Uniform Arbitration Act, but also states that arbitration will be administered by JAMS pursuant to the JAMS arbitration procedures. ECF No. 6 at 7. The Court does not find these terms contradictory. *See* ECF No. 5-1 at 6 (Arbitration Agreement providing that "[t]o the extent that the JAMS rules conflict with Washington law, Washington law shall take precedence"). Plaintiff also points to differences between Washington law (which the Arbitration Agreement provides should be applied) and California law (which the Parties agree should be applied in this dispute, given that Plaintiff subsequently moved to California after accepting employment). Such differences do not create unfair surprise in the Arbitration Agreement itself.

### 2.    *Substantive Unconscionability*

Substantive unconscionability focuses on whether the terms are "overly harsh, unduly oppressive, or unfairly one-sided." *Lim v. TForce Logistics*, 8 F.4th 992, 1002 (9th Cir. 2021). "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 657 (Ct. App. 2004) (quoting *Armendariz*, 24 Cal. 4th at 119).

Plaintiff first contends that the Arbitration Agreement is not bilateral because the agreement is written in terms of Plaintiff's obligations, and because only Plaintiff's claims—and not Defendant's—are subject to binding arbitration. ECF No. 6 at 10-12. However, the Arbitration Agreement provides otherwise: "[T]his agreement to arbitrate also applies to any disputes that the Company may have with me," ECF No. 6-1 at 17, and "except as provided for by the Act and this Agreement, neither I nor the Company will be permitted to pursue court action regarding claims that are subject to arbitration," *id.* at 18.[2]

Plaintiff next contends that Defendant never agreed to the Arbitration Agreement because Defendant never signed it. However, the FAA does not require a written arbitration agreement to be signed in order to be enforceable. *See Serafin v. Balco Props. Ltd.*, 235 Cal. App. 4th 165, 176 (Ct. App. 2015). Here, Defendant drafted the Arbitration Agreement, presented it to Plaintiff as a condition of Plaintiff's employment, expressed in writing Defendant's intent to be bound by that agreement, and subsequently employed Plaintiff. The Court would have no hesitation in enforcing the agreement against Defendant despite the lack of Defendant's signature. *See Banner Ent., Inc. v. Super. Ct.*, 62 Cal. App. 4th 348, 361 (Ct. App. 1998) ("[I]t is not the presence or absence of a signature [on an arbitration agreement] which is dispositive; it is the presence or absence of evidence of an agreement to arbitrate which matters.").

The Parties agree that the Arbitration Agreement contains Washington choice-of-law and forum selection provisions that are unconscionable and unenforceable here, given that during the course of his employment Plaintiff moved his residence from Washington to California. ECF No. 5 at 8; ECF No. 6 at 18. Where a contractual clause is found to be unconscionable, "the court may, in its discretion, choose to do one of the following: (1)

---

[2]   Contrary to Plaintiff's assertion, ECF No. 6 at 15, the Arbitration Agreement does not expressly allow Defendant to bring its claims against Plaintiff in Court. Instead, it provides that "*[t]o the extent that any lawsuit is permitted under this Agreement*," Plaintiff consents to the jurisdiction and venue of the state and federal courts in Washington. ECF No. 6-1 at 19 (emphasis added).

refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results." *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 513 (2024); *see also* Cal. Civ. Code § 1670.5(a). In deciding whether to sever, courts may consider a range of factors including whether the central purpose of the contract is tainted with illegality, whether the agreement contains more than one unlawful provision, whether severance would serve to remove the unconscionable taint from the agreement, the degree of procedural unconscionability, and the interests of justice. *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1099-1101 (9th Cir. 2024).

Considering these factors, the Court exercises its discretion to sever the Washington choice-of-law and forum selection provisions here. Although the Arbitration Agreement here is an adhesive employment contract, its central purpose is not illegal, and the Court can effectively remove the taint of substantive unconscionability from the agreement by severing the offending provision and by—consistent with the agreement of the Parties—applying California law to the dispute. Defendant argues that severing here would remove the incentive for out-of-state employers like Defendant to provide employees who move to California with a new employment agreement containing terms consistent with California law. ECF No. 6 at 13, 14. However, the Court concludes that severance would not disserve the interests of justice here by imposing an undeserved detriment to Plaintiff or benefit to Defendant. There is no indication that the Washington choice-of-law and forum selection provisions were unconscionable at the time the Parties entered into it, at which time Plaintiff was a Washington resident. The Court also notes that the Arbitration Agreement itself contains a severability clause. *See* ECF No. 5-1 at 7 ("If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.").

In conclusion, although the take-it-or-leave-it nature of the Arbitration Agreement results in some level of procedural unconscionability, with the Court's severance of the

Washington choice-of-law and forum selection provisions, the remainder of the agreement is not substantively unconscionable, and Plaintiff has not established its unenforceability. The Court will therefore enforce the agreement to arbitrate.

## IV. CONCLUSION

For the above reasons, the Court:

1. **GRANTS** Defendant's motion to compel arbitration [ECF No. 5].

2. **DETERMINES** that the Washington choice-of-law and forum selection provisions in the Arbitration Agreement are void and unenforceable and **SEVERS** them; consistent with the present agreement of the Parties, Plaintiff's lawsuit shall be governed by California law.

3. **ORDERS** the Parties to submit to arbitration in the manner provided for in the Arbitration Agreement and consistent with this Order.

4. **STAYS** this action pending resolution of the arbitration.

5. **ORDERS** the Parties to file a joint report, no longer than five (5) pages, regarding the status of this action within twenty-one (21) days of the completion of the arbitration, or within six (6) months from the date of this Order, whichever occurs first.

**IT IS SO ORDERED**.

Dated: December 2, 2024

_____
Hon. Robert S. Huie
United States District Judge